May I please the court, Steve Morazos on behalf of plaintiff appellant Rendy Parker. This case involves an important issue that goes beyond just Ms. Parker's individual case. As the court was well aware many of these Social Security cases that the district court hears as well as that make it to the appellate court involve the administration calling either one or both of kinds of experts either a medical expert or a vocational expert. The regulations provide for the appropriate individuals to appear and testify in their respective fields and offer expert opinion. I as a member of my firm often have the obligation of telling this court or the district courts why the commissioners experts are wrong and the commissioner stands here before you or argues in its briefs why their experts are correct and uses the expert testimony as a sword against my simply asking the commissioner to agree with its own expert that they called and and and had testified at Ms. Parker's hearing and on the current application there was no other expert called there was no objection to this particular expert and so we are simply asking it as a broader issue is to ask the commissioner to allow individuals to use their own experts as shields the same way that the commissioner is using them as a sword in other cases. But why I understand that the agency did not really rely on a race to cut or a claim preclusion but why isn't this really a claim preclusion problem in that the question of what her prior job was had been fully litigated through this court and why why did she get to do it all over again? I understand that she got to apply for new benefits  in the later period and had there been any new facts having to do with something in that period it would be different but this is these facts go back before I have nothing to do with anything that developed in the later period and why how come she got to do it over again? Well as Your Honor has mentioned she got to do it over again because the law of social security allows her to do it over again. Even as to the facts that are already been determined? Well the. Through this court why isn't leave aside whether the agency rule is race to cut or why isn't the determination of this court race to claim preclusion? Because this court. On us now. Because in the prior application which is separate than the current application the court didn't have all the evidence. But that's not usually the way claim preclusion works. It didn't have the vocational expert. So what? It's still not the way claim preclusion usually works. The. Because the. Even the appeals counsel identified a different job than the prior decision. I understand that but I don't understand from our point of view right now. Okay. There is an earlier opinion in this court. Right. So why is  that? Because the best simple answer is we need to respect expert opinion and recognize Your Honor. If this were a district court case. Yes. Which had been tried in a district court and there was no expert the first time. And then you came back and you said oh now I have an expert so I want to re-litigate that fact. Could you do that? On the  application that I was, that had already been decided? No. No. On a new application as to the same fact. I mean that's the difference between race to decode and claim preclusion. Well, there, okay. The new facts are there was more extensive testimony during the hearing. There was different testimony elicited in the hearing. The 2005 hearing goes to the question of whether or not the ALJ did a proper inquiry. I'm not re-litigating that case because it's been decided. But for Your Honor's to say that new vocational testimony that has never appeared in the record for any application, because this is actually the third application, then is to say that vocational, that new evidence that from an expert that actually provides that evidence that was missing. Is there a legal reason? I mean your argument would not work if this was a second tort case in which she had already litigated what her job was and now she had a new tort but she wants to litigate it again. Is there something about this administrative scheme that makes it different so that ordinary rules of collateral estoppel don't apply? Well, yes, Your Honor. The commissioner allows individuals to file a subsequent claim and the administration doesn't apply res judicata when there's new evidence or there's, usually it's when there's a change in evidence. New evidence, that's one old fact. Your Honor. Well, did her job change between 2005 and 2009? The, well, I guess the answer to that question would be yes, Your Honor. Well, her testimony changed. No, it didn't change. Her testimony, yeah, her testimony changed in terms of the number of times she was involved in repossessed cars. In my recollection of the record, during the first claim or the first application, they wrote down or they took a report that she went out approximately once a week or once a month. That was at page 92. At the first hearing on the 2005 application, she said about twice a month. And at the final hearing in 2009, if I recall correctly, it may have been once a week, but I don't think it was a definite statement of that respect. But it hasn't, it didn't change to the fact where she said that she did it infrequently and that she did it every day. She consistently testified that as part of her job, she would have to leave the office and either deal with someone voluntarily turning in a car that was being repossessed in a possession site to take inventory of the cars as well as going to auctions to make sure those cars were processed correctly. The dispositive facts of this case are that what makes it unique is that the 2009 hearing, she wasn't even present when the vocational expert began her testimony. The record shows that she arrived late to her hearing. And so the vocational expert offered an opinion, the bank collector job, which is a sedentary, there's only three jobs in the DOT that actually have the word repossess or repossessor in them. There's a sedentary, a light and a medium and they're all in this record. So based on the facts that were in the record at the time of the vocational expert's review, the vocational expert offered an opinion, bank collector, sedentary. They brought the claimant in and she described her job for the first time in front of a vocational expert who said, you know, based on the testimony that the judges elicited, her job was actually performed at a more demanding level. And so to answer your question, that's the new fact. That is the new fact. That evidence, that testimony of the vocational expert. In ALJ's -- But it was based on her changing her story, too, right? She didn't change her story. She said she went out and took the evidence. But she said now she did it a lot more frequently than she said it before. Well -- Is that right or wrong? I do not believe that she said a lot more frequently, Your Honor. If I may, I'll grab the testimony. I have it cited. I just don't have it memorized. But I don't have how -- I know she said twice a month at the first hearing and I would be very much surprised if she said more than once a week at the second hearing, if that. And also, did she ever -- I understood her earlier testimony to be not that she was going out and repossessing cars. Okay. But that she was going to the places which had repossessed them. Correct. To inventory them just to see what they were. That's always been the testimony. So how could she be a repossessor? She wasn't repossessing cars. She was out in the field dealing with the act of repossession. See, this is where the problem is. You and I have above average intelligence. And you and I could come to a layperson's agreement about whether or not this is this job or that job. But at the end of the day, you and I are not certified as vocational experts to offer expert opinion at a hearing. And that's what I'm arguing for. To respect -- I understand it's a thing -- it's a hard thing to do. If she wasn't repossessing cars, she would happen to be a car repossessor. Because even the sedentary occupation that's cited by the appeals counsel anticipates that sometimes that person --- That's different. But you're arguing that she was a car repossessor. No. She didn't repossess cars. No. I'm arguing that the appeals counsel didn't have the vocational expertise to disregard the vocational expert testimony on its own initiative. If they didn't like the vocational testimony, then they could have did what they should have done, which is send them back down and let an ALJ, the trier of fact, hear the case and elicit further testimony. But they simply decided to ignore it. Actually, what they did is they just took apart they liked, which was an initial vocational expert, understood the complete job. And so that's the challenge in this case is, again, if vocational expert testimony is going to be used to affirm ALJ decisions, then vocational testimony has to cut both ways. And when it's favorable to a claimant, it shouldn't just be disregarded because we don't like it. And if it doesn't make sense to us, then the appropriate thing to do is let the have the opportunity to observe the demeanor of the witness, the vocational expert, Dr. Paul, listen to the testimony, and come to his own conclusion about that. The appeals counsel didn't do that. They just ignored it. Well, it is true that she wasn't repossessing cars as we think of it. She was doing something a little bit different. It was not sedentary, but she would go out to these, look at the inventory of cars who had already been repossessed. Correct. And in the prior case? I apologize, Your Honor. Assuming that, do you think under the DOT that that fits a sedentary, medium, heavy definition as a matter of law applied to the, what you say are the undisputed facts? I honestly believe when I litigated her first application from the 2005 application that she did it at the light level, Your Honor, the light occupation that is a without vocational expert evidence and facts. That's what I litigated. When I went to the second hearing, or the first hearing of the third application, the vocational expert, in her wisdom, decided that it was the best fit in a medium job. I'm not a vocational expert. I didn't argue against it, but I can't stand here and say that I necessarily agree or disagree with that statement, but, you know, if you're asking me, either way she wins at the light level, either, because the undisputed fact is both in the last decision and this decision, her residual functional capacity limits her to sedentary work. So whether her last work was light or medium, she's still going to grid out or take advantage of the medical vocational guidelines. Excuse me. And so I'm merely saying that I didn't argue that it was. I get your answer, and I appreciate it. She clearly has a lot of problems, and I can see that if her job did require her to go out and actually repossess cars, there would be, she clearly wouldn't be able to do that. I guess my question is whether that really was her job. The appeals counsel doesn't dispute that at least minimally, if I take the appeals counsel's language, at least 10 percent of the time she went out and did non-sedentary work. And so we take these facts in, and the only one arguably an expert to digest them and gestate them out is that vocational expert who said, based on my expertise, reviewing all the facts that I'm supposed to review as a vocational expert, I'm going to be able to do that, perhaps because of the aspects of being out in the field, either taking voluntary possessions or visiting. I haven't spent much time at repossession yards, but I'm assuming it's somewhat like a tow truck yard. So you're saying it should have gone on to the next step. The appeals counsel should have accepted that at face value, and it should have gone on to determine whether there were other jobs that she could work in with whatever capacity she has. Well, at step five, LJK found that she took advantage of the medical vocational guidelines. So he completed the disability analysis in her favor. The appeals counsel should have done what he did, in my opinion, and found the same way. But obviously, if we look just at the appeals counsel decision and we find that it was wrong at step four, then yes, there is, because LJK's decision was vacated by the appeals counsel, then remand to finish that step would be appropriate. But ultimately, because LJ has only heard the case one time, in theory, the administration should send it back to him, and he's already made his determination, which is that she should take advantage of the medical vocational guidelines at step five. Could she stay at that job if she didn't have to leave? Stay at that same loan collector job if she didn't have to leave the office and could handle it all by phone? If her job was solely sedentary based on that RFC, then factually, yes, she would have been found able to return to her past role and work, because, and I think that's what the prior decision said, was because her job is, her job without the leave the office aspects, whether they're at the light or the medium level, is a sedentary job. But the vocational evidence that was developed on the new claim determined that those aspects pushed it into a higher category. And that was the reason, the conclusion that we rely on. Well, you're out of time, but we'll give you a couple of minutes. Thank you. Good afternoon. May it please the Court. Daniel Talbert for the Commissioner of Social Security. I just want to start off by addressing a point that Judge Sotomayor has made, which is that the appeals council is not the only agency where this has already been adjudicated. The only issue By us? See, that's what confused me. I did not understand that to be what the exactly what the appeals council said. Now, maybe that doesn't matter. Maybe it's collateral estoppel as far as we're concerned. But it appears to me that the appeals council doesn't seem to look at it that way. They did relook at the evidence instead of saying, oh, it's all over, it's already been decided. They did, Your Honor, and I'm happy to discuss that in further detail. But it is our position that, as you said, with respect to the Federal courts, the doctrine of collateral estoppel applies. You know, this has already been, it's already been resolved with that issue. And that one issue is the only thing that's before this Court, the classification of Randy Parker's past relevant work. This Court has already looked at that, already decided that. With respect to the issue Why doesn't the agency, I mean, on the other hand, I guess the agency, the way they were looking at the case, if this new record had supported something else, they would have come to a different conclusion. And then what are we supposed to do? Well, I'll make one point there, Your Honor. The conclusion that we're collateral estoppel from. Yeah. Supposedly. I mean, it seems to me that the appeals council didn't rely on that, so. Well, Your Honor, this Court hadn't made its decision yet when the appeals council decided on the, on this application. The district court had. The district court had. And generally under Federal law, it's the district court that matters. Yes, Your Honor. But it was, this issue was pending before this Court at the time. There was that prior appeal. And that was the reason why, and that was the reason why the, there was the whole issue of the reopening of the earlier application was improper. But that's a different problem. It is a different point entirely. And that's not being appealed. Well, the opposing counsel raised that issue in his brief, but from what he said at oral argument, and he could certainly clarify this on rebuttal, but I took it to be a concession that he wasn't raising those, the prior application. He said something about that the Court couldn't really re-decide that same claim, that earlier claim, that's the ALJ here who had been, that ALJ here had reopened. So I think that apparently it is the case that that's not being discussed. It is the only issue that we have is the sedentary classification. What standard of review does the appeals counsel use? Well, Your Honor, the appeals counsel reviews based on substantial evidence and also on errors of law. And that was the case here. I just want to make one brief point. Okay. Before you go, I'll keep on to that. It didn't appear that they applied that in this case. Well, Your Honor, I would disagree. Is incorrect. They did. And the first comment I want to make in response to that is the appeals counsel's decision to review is not a decision that's before this Court. It's not the final decision of the commission. I'm just saying. I'm looking, I'm focusing on their decision, and they basically are disagreeing with the finding, the factual finding. Yes, Your Honor. And it's their right to do that. This Court said, and I think it was Razy v. Heckler, that the appeals counsel has complete authority to review an ALJ decision, and it can disagree with the ALJ decision, even if that ALJ's decision was supported by substantial evidence. And that's what this Court has said. No, it's not substantial evidence. Yeah. I'm sorry. I have to back up, and I don't want to chew up time. But you said the standard review from the appeals counsel is substantial evidence. And then you just said, but they can ignore that standard of review. Well, Your Honor, that's what this Court had said. With respect to how the ---- Wait a second. Sorry, Judge. It has to be one or the other. Either they are ---- I understand that they can sua sponte review something. Do they then not themselves seeing the ---- being in a position, for example, to make a credibility determination, they can ---- are they looking at substantial evidence, or are you saying we're looking at substantial evidence? I'm confused about what you're saying. I'm sorry, Your Honor. I think I'm responsible for that confusion, so I apologize for that. This Court uses the substantial evidence standard. Okay. But why does the appeals ---- Does the appeals court take a de novo? Is it the government's position that the appeals court does de novo review of an ALJ? Well, Your Honor, when they assume jurisdiction, they would take de novo review of the ---- they would be looking at the claim. It essentially is that form. The substantial evidence issue comes into play when you look at the regulations as one of the situations when the appeals counsel has to assume jurisdiction. So I think that's where I got confused on the issue of how they're looking at it. But ---- I mean, it's just ---- the reason I ask the question is that usually in an administrative law, when you're dealing with an appellate body, they don't ---- they review the findings of fact for clear error and they ---- or some other standard. And here it doesn't seem to be any indication of what the standard review is. And if they got the standard review wrong, then we have to send it back and say, okay, use the appropriate standard review. That's why I'm asking the question. Well, they didn't get the standard review wrong, Your Honor. In this case, the appeals counsel is ---- has the role of fact finder because they're the ones that made the final decision. But this is what's strange about the case. It seems to me that although they weren't applying collateral estoppel, they were. Because if you ---- they claim to be. Because if you look at what she actually said the second time around, she said that she does this every day or all through the week and that she actually repossesses cars, I think she said. She goes to auctions, she said. I'm sorry. Go ahead. I'm sorry. I thought you were finished. And so if there were ---- she was entitled to make a whole new record, then ---- and then what ---- does the earlier ---- does the fact that she said something different earlier come into play at all? Yes, Your Honor. Oh, I have. That does matter because we're looking at the whole record. But the record of what? The record of one. That's the record of this application? The entire record that's in this case. In the excerpts of record, it involves what she said in the prior application. It involves what she said in this application. It's all in there. It's all under review. Isn't it entirely possible that the job changed over time? I mean, you know, that there became more car repossessions. She had to get more involved in that and that her testimony ---- No, I thought she had stopped working. Judge Breslin is correct. She hadn't worked. Her past relevant work didn't change. The dictionary of occupational titles didn't change. It hasn't been updated for many years now. So she was describing in her second testimony the exact same job that she had described in her first? Yes, Your Honor. It was the same job. So let me ask this. Let's assume that ---- I mean, it seems undisputed that she had to leave the office, right? Why isn't that light work, at least? Well, the reason for that, Your Honor, is that her ---- the way she was doing the job involved working in an office most of the time. There were rare occasions when she would leave the office, and that's why it comes down to an issue of her work as she performed it versus the job as it's generally performed. The job as she performed it, which would involve leaving the office and working perhaps at a light level, yes, I mean, if she's limited to sedentary work, she wouldn't be able to do that. But her job as it's generally performed ---- Yes. But she does ---- you know, at one point it's twice a month, sometimes it's weekly, but there's no question that part of her job duties are to leave the office and go to take these inventories. Why isn't that light work? Well, Your Honor, it's an issue of the job as ---- the job of having different components, of her doing something that's not really part of the bill of collection clerk job. And that's something that was argued before this Court in the earlier appeal, that it wasn't decided two years ago, so that's already been ---- I thought that the ---- I'm sorry. I thought that the bill collector job as described has some sort of going out of the office to do repossession in it. Are you referring to the reference in the dictionary where it mentions car repossessor? Right. No car repossessor, where it mentions the bill collector job. I'm sorry. It says something about you might go out and do something with repossessed cars. May I have a moment to look at this? Yes. Thank you. Are you talking about the collection clerk? Yeah, the collection clerk. I think there's a ---- it says may attempt to repossess merchandise such as automobile furniture and appliances. Right. Okay. So the question is, is it then categorized as sedentary? Is that categorized as a sedentary job? Yes, Your Honor. That one, 241-367-0 ---- I'm sorry, 241-367-0. It does seem counterintuitive. I don't understand how somebody who can hardly stand to walk is going to come out of the office and repossess cars, but this thing seems to say that. And it seems to say it's sedentary. I don't know why. Well, there's no dispute about what the dictionary of occupational title says. I mean, that says the job is sedentary. And it says it includes going out occasionally to repossess jobs. And it mentions that, yes. But isn't that a contradiction in terms? It's not, Your Honor. First of all, sedentary work isn't purely sitting. It involves ---- it involves standing and walking for up to a few hours, up to two hours of the day. So if someone's limited to sedentary work, it's not just a matter of they have to sit at all times. And Ms. Parker had the residual functional capacity to stand and walk at some point. But the more important point, I think, is that the bill collection clerk job is defined in the dictionary as sedentary. The vocational expert who testified at that second hearing and talked about that job identified it as sedentary. And that job is ---- we're essentially, I think we're in agreement, the party's in agreement that if that was her job, that title in the dictionary would be sedentary. And it was only when she said that she does it all the time that he changed his mind. Yes. Is that essentially what happened? Yes. Your opposing counsel said that, in fact, the counsel had found two different jobs. And I think that may be right. I think that they found originally some bank collector job, which was a little different in the first time around. You're speaking about the prior appeal? Yes. Yes, Your Honor. It was a different job. And what was that one? It was ---- I think I have the decision here somewhere, but I'm not sure exactly what it was called. It might be mentioned in the Court's decision there. Collection clerk or bank collector. And did that have to repossess a person? The fact that you might repossess the carnet? I don't recall that off the top of my head, Your Honor. I'm sorry. But I think the significant point there is that that job was sedentary. It was a sedentary classification, and it was sedentary even though Ms. Parker said that she had to leave her office to take inventory a few times a week or a few times or, I mean, sorry, a few times a month. And, again, that's the issue that has already been decided with respect to that job. Even though at some times she'd be doing something at a different level, it could still properly be classified as sedentary. If there are no further questions.  Thank you. Thank you. We'll give you a couple minutes. Starting back with appellee thankfully filed an appendix, an excerpt, which included my brief in the prior case, which included the indentment of four dictionary occupational titles, pages 52 through 60-something, which has the four jobs that we're all talking about. It lists the collection clerk that was identified by the appeals council or the bill collector at the sedentary level. It includes the light work job that was initially identified on her first application by the state agency. It includes the medium repossessor job, which is identified by the vocational expert, and also includes a description of the job that Judge Mathon at the 2005 application of that ALJ decision that was subject to the court's decision previously, which your question was, does it include repossession description? No, it doesn't. There are only three jobs in the whole DOT that talk about repossession. The job identified by the appeals council, which is called the bill collector. There's the medium repossessor job, and then there's the light job that's collection clerk, but with more of an outdoor stuff, outdoor activity. And so the job identified by Judge Mathon will be litigated, but it couldn't have been it because there's no dispute that she did get out in the field and do some repossession activity, but that's neither here nor there. Here, we had a woman who obviously concededly performed sedentary work, but was required to get out in the field. And an expert decided that that activity placed her in a higher position. Could the appeals council, in reviewing this case, look at what she had said earlier? And there seemed to be some contradiction between what she said earlier and what she said now. And I have it here. At 351, on page 351 of the experts in volume 3, she said, we did phone work, and the cars were repossessed. We went out to the repo dealership and took inventory and stuff like that. And then on page 352, she said twice a month. Twice a month. Right. And now she says she does it all through the week. Well, she says. What I'm asking you is a legal question. Right. I mean, was the implicit in what they were saying essentially that she's changing her story now and we're not going to buy it, the details of it? How often she does it? Well, she just said in response to the question if it was a consistent thing throughout the week, she said yes. And prior to that, she said that it depended on how many cars she had to deal with at any particular time. Some days there were more cars repossessed than others. Right. But it's a very different picture than the one she portrayed the first time. Right. Well, could the appeals counsel have rejected the LJ's acceptance of that testimony? The LJ's, if the appeals counsel had followed the guidelines set forth in the case decided in my brief with respect to the appeals counsel overturning the trier of fact without having to grab the opportunity to review or to observe and evaluate the demeanor of the witness? And the answer is no? Is that what you're saying? No. Can the appeals counsel? Has it? Well, of course. Can it? Yes, it could if it did it properly, but it didn't do it in this case. What's properly? They articulated under the Social Security rulings, 967P, the reasons why it was rejecting. You're saying it's the surreptitious way of doing it that's the problem. I mean, that could be. I mean, in other words, it's the fact they didn't really say that's what they were doing. Correct. They just didn't want to explain it. Yes, Your Honor. And if I may just have a few seconds. You asked during the last case about mediation, and stop me if I'm wrong, but in response to a lot of your questions with respect to claim preclusion, it wasn't sua sponte in this case that the appeals counsel did. I received the ALJ's decision in 2009 within a week because I had this previous matter pending. As I always do, I sent it to the government counsel on that particular case because she got everything she wanted because Judge Kaye reopened. So I said, I'm willing to dismiss based on this new finding just in case you haven't seen it yet. A week later, I get that letter from the appeals counsel that says we're reopening. We're taking a look at the ALJ's decision. And then I got a phone call telling me that from the ARC. And then when I went into federal court, because if you look when the complaint was filed, my brief was due in the prior case five days before my complaint was filed. I called up and said, hey, would you like to either delay, notify the Ninth Circuit that we can just hold this case because we have another one at the district court? Or would you like to just stipulate to send it back down and get the district court to match it all together? Because we have an administrative regulatory process that allows these different claims going on. And so I don't want your honors to, again, like I said, mediation process is supposed to be confidential. But in my opinion, it wasn't sua sponte. It just wasn't. And that's it. Appeals counsel got this case because I sent it to them because I wanted to resolve the case as soon as possible. And they didn't like what they saw. And then when I tried to hold off on the other one, they wouldn't let me. And that's just the gosh darn truth. And so if there's claim perjury, there's claim perjury. But it's not for one of me not wanting it, because I was taught by Mr. Rolfing not to waste the court's time. And we tried real hard not to. So thank you, Your Honor. We thank you for your arguments, both of you. And the case just argued will be submitted for decision. I won't be in recess for the morning. All rise.
judges: Thomas, Wardlaw, Berzon